## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

CINDY HARRINGTON, an Individual;

     Plaintiff,

v.

                              No._____
                                JURY DEMANDED

UHS OF LAKESIDE, LLC, d/b/a Lakeside
Behavioral Health System, a Delaware Limited
Liability Company, JOY GOLDEN, an Individual
and, LISA WEAVER, an Individual,

     Defendants.

---

## COMPLAINT

---

       Plaintiff Cindy Harrington ("Plaintiff Harrington"), by and through counsel, hereby sues UHS of Lakeside, LLC, d/b/a Lakeside Behavioral Health System ("Lakeside"), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*., Tenn. Code Ann. § 4-21-301, *et seq*., and for state common law claims.  Plaintiff Harrington, by and through counsel, also hereby sues Joy Golden and Lisa Weaver, each individually, under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. § 4-21-301, *et seq*., and for state common law claims.

## PARTIES

1.  Plaintiff Cindy Harrington is an adult female resident of Shelby County, Tennessee, which is within the Western District of Tennessee. She was employed as the Director of Staff Development and Infection Control for Lakeside in an "at will" relationship from April of 2008 until her termination of employment on April 29, 2013.

2.  Defendant, UHS of Lakeside, LLC, d/b/a Lakeside Behavioral Health Systems, is a Delaware Limited Liability Company with its principal place of business located at 2911 Brunswick Road, Memphis, Shelby County, Tennessee 38133.  According to the Tennessee Secretary of State, Lakeside operates under numerous assumed names, one of which is Lakeside Behavioral Health System. Lakeside is engaged in an industry affecting commerce and, during all times material to the causes of action, has continuously employed more than fifteen (15) employees.

3.  Upon information and belief, a substantial portion of Lakeside's services are carried out at 2911 Brunswick Road, Memphis, Tennessee 38133.  Lakeside is registered with the Tennessee Secretary of State and is authorized to do business in this state.  Lakeside may be served via its Registered Agent for Service of Process, CT Corporation System, 800 S Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

4.  Defendant Joy Golden ("Golden") resides in the Court's District and was

- 2 -

Chief Executive Officer for Lakeside during all relevant periods of time herein.

5.     Defendant Lisa Weaver ("Weaver") resides in the Court's District and was a Nurse Executive for Lakeside during all relevant periods of time herein.

## JURISDICTION AND VENUE

6.     This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, *et seq*., Tenn. Code Ann. § 4-21-301, *et seq*. and Tennessee common law.

7.     Counts I and II, below, are civil actions for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.  Accordingly, Counts I and II of this action present a federal question over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Counts I and II are also civil actions arising under an Act of Congress regulating commerce, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1337.

8.     Counts III through VII, below, are claims for damages brought under the laws of the State of Tennessee that are so related to the federal-question claim in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.  Accordingly, Counts III through VII of this action fall within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.     Venue also lies in this Western District of Tennessee, pursuant to 28 U.S.C. §

1391, because Lakeside conducts business in this District, and the alleged events, acts, behaviors, inactions and omissions of Lakeside and Defendants Golden and Weaver, giving rise to this action, all occurred in this District.

## EXHAUSTION OF REMEDIES

10. Prior to instituting this action, Plaintiff timely filed a charge of sexual harassment and retaliation with the Equal Employment Opportunity Commission (and the Tennessee Human Rights Commission) pursuant to § 706(e) of Title VII, 42 U.S.C. § 2000(e-5)(e) and received a right to sue letter within ninety (90) days of filing this lawsuit. A copy of Plaintiff's Notice of Right to Sue is attached as Exhibit A.

## FACTUAL ALLEGATIONS

11. Plaintiff Harrington, a female, began her employment with Lakeside as an "at-will" employee in 1997, in a nursing position.

12. From April of 2008 until her termination of employment with Lakeside on April 29, 2013, Plaintiff Harrington was the Director of Staff Development and Infection Control for Lakeside and, continued her employment during such time in an "at-will" relationship with Lakeside.

13. Billy Metcalf was employed as a mental health counselor/tech by Lakeside in 2007. He left his employment at Lakeside in the latter part of 2007 to begin employment with La Paloma, another mental health facility in Memphis, Tennessee.

14. Billy Metcalf became re-employed with Lakeside as a mental health

- 4 -

counselor/tech in 2009.

15.   Shortly after Billy Metcalf became re-employed with Lakeside, Terry Brenner, one of Lakeside's Directors, informed Joy Golden, Lakeside's Chief Executive Officer (CEO), that he (Brenner) had been informed by a reliable source that Billy Metcalf had been terminated by La Paloma because he had shown a La Paloma patient a photo of a penis that was on his phone. (A copy of Terry Brenner's Affidavit is attached as Exhibit B.)

16.   Golden responded by stating "Oh No;" she then thanked Terry Brenner for the information and went on to comment, "Lord, I hope he doesn't win the I-Pad;" and, then laughed about it. (An I-Pad was the prize for the winner of a contest that Lakeside had going on at the time.)

17.   Golden never inquired of Terry Brenner as to his source or followed up with him in any way about the matter.

18.   Billy Metcalf was still employed by Lakeside at the time Terry Brenner left Defendant's employment in December of 2009.

19.   Sometime after Billy Metcalf became re-employed with Lakeside and, after Terry Brenner had informed Joy Golden about the information he had received about Billy Metcalf being terminated by La Paloma because he had shown a photo of a penis to a patient that was on his phone, Billy Metcalf text two photos of a penis to Barbara Foster, a part-time employee of Lakeside, to which Ms. Foster informed Billy Metcalf to never do anything like that again. (A copy of Barbara Foster's Affidavit is attached as Exhibit C.)

20.  Also, sometime after Billy Metcalf was re-employed by Lakeside and, after Terry Brenner had informed Joy Golden about the information he had received about Billy Metcalf being terminated by La Paloma because he had shown a photo of a penis to a La Paloma patient that was on his phone, Billy Metcalf text two photos of a penis to Kathy Van Dyke, a former employee of Lakeside who had recently worked with Billy Metcalf at Lakeside's Triage. Ms. Van Dyke likewise informed Billy Metcalf to never again text her such photos. (A copy of Kathy Van Dyke's Affidavit is attached as Exhibit D.)

21.  Sometime thereafter, Lakeside's Triage at the Memphis Regional Hospital, referred to as the "MED," was closed and Billy Metcalf, along with some other Triage employees, were transferred back to Lakeside's principal facility ("Campus") where Plaintiff Harrington was employed as Lakeside's Director of Staff Development and Infection Control.

22.  In the early part of 2013, Plaintiff Harrington began receiving inappropriate sexual text messages from Billy Metcalf.

23.  Even though Plaintiff Harrington informed Billy Metcalf not to text any more inappropriate messages to her, Billy Metcalf continued to text her sexually-harassing messages, including comments that he wanted to give her "massages" and "multiple orgasms." Each and every time he made sexual advances to her, Plaintiff Harrington rejected and discouraged such inappropriate behaviors.

24.  Since Billy Metcalf would not cease sending sexually-harassing messages to

Plaintiff Harrington after she told him to stop such behaviors, Plaintiff Harrington, in keeping with Lakeside's anti-harassment policy but, in credible fear of retaliation by Lakeside's Administration for voicing complaints (considering the administration's past practice of such), exercised her protected rights under federal and Tennessee statutes and voiced complaints (opposition) to a Lakeside Director about Billy Metcalf's texting her sexually-harassing message and his comments that he wanted to give her "massages" and "multiple orgasms." (A copy of Lakeside's Anti-Harassment Policy is attached as Exhibit E.)

25. However, upon information and belief, Lakeside failed to investigate Plaintiff Harrington's sexual harassment complaints against Billy Metcalf and, consequently, no prompt and appropriate corrective action was taken against Billy Metcalf in response to Plaintiff Harrington's sexual harassment complaints against him.

26. In the latter part of April, 2013, Billy Metcalf text two photos of a penis to Plaintiff Harrington's cell phone (a phone that was being used by Plaintiff Harrington's 12- year old daughter at the time.)

27. When Plaintiff Harrington's 12-year old daughter saw one of the photos, she screamed.  Plaintiff Harrington saw the photos and quickly deleted them from the phone that her daughter was using at the time.

28. Plaintiff Harrington, in keeping with Lakeside's anti-harassment complaint procedures (Exhibit E), exercised her protected rights under federal and

Tennessee statutes and complained to her immediate supervisor, Lisa Weaver (Lakeside's Nurse Executive), about Billy Metcalf's text to her phone of two photos of a penis at a time in which her 12 year old daughter was using her phone, as well as complained to her about Billy Metcalf continuing to send her sexually-harassing messages, such as wanting to give her "massages" and "multiple orgasms," after she had repeatedly told him to stop doing so (albeit in credible fear of retaliation by Lakeside's Administration for making such complaints, considering Lakeside Administration's past practice of retaliating against employees for making complaints.)

29. In response to Plaintiff Harrington's complaint about Billy Metcalf's text photos of a penis to her phone, Weaver callously responded by asking her, "was it hard? was it big?"

30. Instead of promptly, properly and confidentially processing and investigating Plaintiff Harrington's sexual harassment complaints against Billy Metcalf in keeping with Lakeside's anti-harassment policy (Exhibit E), Weaver immediately informed Billy Metcalf of Plaintiff Harrington's sexual harassment complaints against him.

31. As a result of Weaver informing Billy Metcalf of Plaintiff Harrington's sexual harassment complaints against him, Billy Metcalf began sending sexual harassment retaliatory, intimidating and threatening messages to Plaintiff Harrington, with such comments as "karma, baby."

32. In fear of Billy Metcalf's sexual harassment retaliatory threats to her,

Plaintiff Harrington exercised her protected rights under federal and Tennessee statutes by calling Weaver and asking (voicing opposition to) her why she had informed Billy Metcalf about her sexual harassment complaints against him in such an untimely, inappropriate and un-protective manner (albeit in credible fear of retaliation by Lakeside's Administration for making such complaints, considering Lakeside Administration's past practice of retaliating against employees for making complaints.)

33.    After receiving no meaningful response from Weaver as to why she had informed Billy Metcalf about her sexual harassment complaints against him and, after discussing the matter with other personnel and being encouraged to do so, Plaintiff Harrington exercised her protected rights under federal and Tennessee statutes by voicing her opposition about the manner in which Weaver was handling and processing her said complaints against Billy Metcalf by sending Lisa Weaver an email, stating, *inter alia*,   "Two hours after our conversation, I am greatly concerned that I cannot go to my administrator about a matter such as this and not worry about being threatened."

34.    On information and belief, Weaver immediately contacted Joy Golden, Lakeside's Chief Executive Officer and top administrator, and complained to Golden about Plaintiff Harrington's criticism of the manner in which she (Weaver) had informed Billy Metcalf of Plaintiff Harrington's sexual harassment complaint against Billy Metcalf shortly after receiving such

complaint and, the above quoted email Plaintiff Harrington had sent to Weaver.

35.   Within 20 minutes after Plaintiff Harrington sent Weaver the above quoted email, Joy Golden called Plaintiff Harrington into her office, in the presence of and, in concert with, Lisa Weaver.   Lakeside's Human Resources Manager, Stacy Schroeppel, also was present in this meeting.

36.   Instead of asking Plaintiff Harrington about her sexual harassment complaints against Billy Metcalf and his sexual-harassment retaliatory threats to her when he learned of her sexual harassment complaints, Joy Golden, in concert with Weaver,  commenced to scream, yell at and berate Plaintiff Harrington for more than two hours because she had emailed Weaver the above quoted message in which she opposed the manner in which Weaver had handled her sexual harassment complaints against Billy Metcalf.

37.   Golden screamed, yelled at and berated Plaintiff Harrington for more than two hours about her sending the email to Weaver, contending the email had become an official document that could be used against Lakeside. (Plaintiff Harrington's credible fear of Joy Golden and Lisa Weaver, as members of Lakeside's Administration, retaliating against her for voicing opposition and complaints about Billy Metcalf's sexual harassment and retaliatory threats and, her complaints about the manner in which Lisa Weaver informed Billy Metcalf of her sexual harassment complaints against him shortly after

- 10 -

receiving such complaints, suddenly became a reality.)

38. Although Golden asked very little about Plaintiff Harrington's sexual harassment complaints against Billy Metcalf during this meeting, she ended the meeting by telling Plaintiff Harrington that she (Harrington) would be fired if she talked with anyone about her sexual harassment complaints against Billy Metcalf.

39. On the following day, Plaintiff Harrington once again was called into Joy Golden's office in the concerted presence of Weaver. Stacy Schroeppel also was present in the meeting with Golden and Weaver.

40. In this meeting, instead of promptly, properly and adequately addressing and investigating Plaintiff Harrington's sexual harassment and retaliatory complaints against Billy Metcalf and, Plaintiff Harrington's complaints against Weaver for the untimely manner in Weaver informed Billy Metcalf of Plaintiff Harrington's complaints against him, Golden, in concert with Weaver, continued to rage against Plaintiff Harrington for sending the aforementioned email to Weaver.

41. Also, in this meeting, Golden, in concert with Weaver, commenced to engage in an unfounded, unjustified, unwarranted, unrelated and private-invasive investigation of Plaintiff Harrington, including questions about Plaintiff's private life and relationships that had no relevance to her said complaints against Billy Metcalf and Weaver.

42. Golden, in concert with Weaver, ended this meeting by suspending Plaintiff

Harrington from work and reiterated that she would be fired if she discussed her sexual harassment complaints against Billy Metcalf with anyone.

43    However, Billy Metcalf continued to work his regular shift without any discipline being taken against him. (On information and belief, Golden, in concert with Weaver, callously and unjustifiably challenged Billy Metcalf to find and provide her with evidence that Cindy Harrington had invited him to send the photos of a penis to her. There was no basis for such challenge and there was no such evidence.)

44.   Joy Golden's investigation of Plaintiff Harrington extended to an unfounded, unwarranted, unjustified, unrelated and private-invasive investigation of a lifelong and close male friend of Plaintiff Harrington who also was employed by Lakeside.

45.   During such investigation, Joy Golden, in concert with Weaver who also was present in a meeting, informed Plaintiff Harrington's lifelong and close friend that he would be fired if he discussed Plaintiff Harrington's sexual harassment complaints against Billy Metcalf or, anything about her investigation of the matter, with anyone else, including Plaintiff Harrington.

46.   During such investigation, Golden, in concert with Weaver, also threatened Plaintiff Harrington's lifelong and close friend with termination if he refused to provide her with private and personal messages between Plaintiff Harrington and himself but, on the other hand, that he would not be fired if he provided her evidence that she could use to get rid of Plaintiff

Harrington. On information and belief, Golden, in concert with Weaver, further told him she would pay for his time to go through his emails and text messages and attempt to find some information she could use to get rid of Plaintiff Harrington.

47.   During such meetings, Plaintiff Harrington's lifelong and close friend exercised his protected rights under federal and Tennessee statutes by voicing opposition about Billy Metcalf's sexual harassment of Plaintiff Harrington to Golden and Weaver and, his opposition to Golden and Weaver, about the manner in which they were investigating Plaintiff Harrington's sexual harassment complaints against Billy Metcalf.  When he then refused to provide Joy Golden with private and personal messages between Plaintiff Harrington and himself, he was terminated a few days later.

48.   The following Monday, after being suspended from work for some four days, Plaintiff Harrington was summoned back to Lakeside. After arriving back at Lakeside, Weaver, in the presence of Schroeppel and, at the direction of Golden, terminated Plaintiff Harrington's employment with Lakeside on the pretext that she had text someone at work, when such text in question occurred at a time during which she was not at work and in another city.

49.   Prior to her termination, Plaintiff Harrington had an impeccable employment record with Defendant. She previously had never been questioned about the unfounded, unjustified, unwarranted, unrelated and private-invasive matters Joy Golden, in concert with Weaver,  raised in said

meetings or, about matters for which Plaintiff Harrington was berated and badgered during the meetings leading up to her said suspension and termination of employment.

50. Plaintiff Harrington's complaints against Billy Metcalf and Lisa Weaver were never promptly, properly or adequately investigated, nor were they ever adequately and properly addressed and corrected by Lakeside.

51. On information and belief, Billy Metcalf was never disciplined, suspended or terminated for his sexual harassment and sexual-harassing-related threats toward Plaintiff Harrington.

## Count I: Title VII Claim against Lakeside for Sex Discrimination and Sexual Harassment

52. Plaintiff Harrington restates and reincorporates paragraphs 1 through 51 as though fully set forth herein.

53. This Count is an action for damages against Lakeside under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq*., for sex discrimination, sexual harassment and sexual harassment retaliatory threats, made by Billy Metcalf toward Plaintiff Harrington, for Lakeside's failure to reasonably prevent the sexual harassment and sexual harassment retaliatory threats made by Billy Metcalf toward Plaintiff Harrington, for Lakeside's failure to promptly, properly and adequately investigate and, address and correct, Plaintiff Harrington's sexual harassment and sexual-harassing-related complaints against Billy Metcalf and, for Lakeside's failure

to promptly, properly and adequately   investigate, address and correct, Plaintiff Harrington's opposition to the manner in which Lisa Weaver was handling her sexual harassment and sexual-harassing related complaints against Billy Metcalf, all occurring during the course of Plaintiff Harrington's employment with Lakeside and, during all times pertinent to this action.

54.   At all times pertinent to this action, Defendant Lakeside engaged in an industry affecting trade, traffic, commerce, transportation, transmission, or communication among several states.

55.   At all times pertinent to this action, Defendant Lakeside had fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current calendar year.

56.   After Billy Metcalf became re-employed by Lakeside and, Terry Brenner conveyed to  Joy Golden that he (Brenner) had been informed by a reliable source that Billy Metcalf had been terminated by La Paloma for showing one of its patients a photo of a penis from his phone, Lakeside failed to investigate, address and correct such concern which, had it investigated, addressed and corrected such concern, could have resulted in Lakeside reasonably preventing Billy Metcalf from sexually harassing Plaintiff Harrington, as well as preventing Billy Metcalf from sending photos of a penis to Barbara Foster and Kathy Van Dyke.  Lakeside thereby failed to reasonably prevent Billy Metcalf's unwelcome, unwanted, severe, repetitive and pervasive sexual harassment of Plaintiff Harrington, contrary to the

requirements of its anti-harassment policy (Exhibit E) and, contrary to the requirements of Title VII of the Civil Rights Act of 1964, as amended.

57. After Plaintiff Harrington complained to one of Lakeside's Directors about Billy Metcalf's unwelcome, unwanted and repetitive sexual harassing messages (including comments that he wanted to give Plaintiff Harrington "massages" and "multiple orgasms"), Lakeside failed to promptly, properly and adequately investigate, address and correct Plaintiff Harrington's sexual harassment complaints against Billy Metcalf and, failed to take adequate and proper corrective or disciplinary action against Billy Metcalf for his sexual harassing behaviors, contrary to the requirements of its own anti-harassment policy (Exhibit E) and, contrary to the requirements of Title VII of the Civil Rights Act of 1964, as amended.

58. After Plaintiff Harrington complained to her supervisor, Lisa Weaver, about Billy Metcalf texting two photos of a penis to her phone (a phone that was being used by her 12-year old daughter at the time), Lakeside failed to promptly, properly, adequately and confidentially investigate, address and adequately correct Plaintiff Harrington's complaints and opposition to Billy Metcalf's unwelcome, unwanted and severe sexual harassment of her, contrary to the requirements of its own anti-harassment policy (Exhibit E) and, contrary to the requirements of the Civil Rights Act of 1964, as amended

59. After Plaintiff Harrington complained to Weaver about Billy Metcalf's sexual harassing-related threats toward her, Lakeside failed to promptly

investigate, address and adequately correct Plaintiff Harrington's said complaints and opposition to such sexual harassing-related threats, contrary to the requirements of its anti-harassment policy (Exhibit E) and, contrary to the requirements of the Civil Rights Act of 1964, as amended.

60. After Plaintiff Harrington complained about Lisa Weaver informing Billy Metcalf of her sexual harassment complaints against him, via an email, Lakeside not only failed to promptly, properly and adequately investigate, address and correct Plaintiff Harrington's complaint and opposition to the manner in which Lisa Weaver was handling her sexual harassment complaint against Billy Metcalf but, instead, embarked on and engaged in an investigation against Plaintiff Harrington for sending such email to Lisa Weaver (contending that such email had become an official document and could be used against Lakeside), all of which complaints against Lisa Weaver led to Joy Golden and Lisa Weaver's concerted retaliatory suspension and termination of Plaintiff Harrington's employment with Lakeside.

61. After Plaintiff Harrington complained about Billy Metcalf's sexual harassment and threatening behaviors toward her, Joy Golden informed Plaintiff Harrington that if she discussed her sexual harassment complaints with anyone else, she would be fired. In doing so, Golden and Lakeside violated her right to engage in protected activities as provided by Title VII of the Civil Rights Act of 1964.

62. After Plaintiff Harrington complained about Billy Metcalf's sexual

harassment and threatening behaviors toward her and, her email complaint against Lisa Weaver for mishandling the investigation of her said complaints against Billy Metcalf, Lakeside not only failed to promptly, properly and adequately investigate, address and correct such behaviors but, instead, commenced an unfounded, unjustified, unwarranted, unrelated and private-invasive investigation of Plaintiff Harrington, all of which was in retaliation against Plaintiff Harrington for making the aforesaid complaints against Billy Metcalf and Lisa Weaver and, all of which was contrary to its anti-harassment policies (Exhibit E) and, in violation of Title VII of the Civil Rights Act of 1964, as amended.

63.   The failures of Lakeside, Golden and Weaver, as described above, constitute a violation of the sex discrimination and sexual harassment provisions of Title VII of the Civil Rights Act of 1964, as amended.

64.   Billy Metcalf's sexual harassment and sexual harassing-related threatening behaviors toward Plaintiff Harrington, as previously described in this Complaint, were unwelcome, unwanted, severe, repetitive, pervasive and created an intimidating, hostile, uncomfortable and offensive work environment for Plaintiff Harrington and, had the effect of unreasonably interfering with her work performance and private life, all of which caused her to suffer, among other things, stress, headaches, sleep loss, depression, anxiety, irritability, and relationship problems.

65.   As a direct and proximate result of the sexual harassment and sexually

harassing-related threats by Billy Metcalf toward Plaintiff Harrington, her complaints against Billy Metcalf because of such behaviors and, Plaintiff Harrington's aforesaid complaints against Lisa Weaver and, the failure of Lakeside to promptly, properly and adequately investigate, address and correct Plaintiff's said complaints, Plaintiff Harrington has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

66. By its actions, behaviors, inactions and omissions, as aforesaid, all of which were intentional, malicious and reckless, Lakeside has violated Title VII of the Civil Rights Act of 1964, as amended.

67. At all relevant times set forth herein, Plaintiff Harrington avers that:

(a)   She, as a female, was a member of a protected class under Title VII.

(b) She was subjected to unwelcome, unwanted, offensive and repeated sexual advances in the form of sexual comments, sexual advances, sexual visuals and requests for sexual favors by Billy Metcalf, all of which were based on her sex.

(c) She exercised her protected rights under Title VII by complaining to a Lakeside Director and her supervisor, Lisa Weaver, about Billy Metcalf's unwelcome, unwanted and repeated sexual comments, sexual advances, sexual visuals and requests for sexual favors.

(d) She also exercised her protected rights under Title VII by complaining to Lisa Weaver about Billy Metcalf's sexual-harassing related threats toward

her.

(e)  In addition, she exercised her protected rights under Title VII by complaining to Joy Golden about the manner in which Lisa Weaver investigated her sexual harassment complaints against Billy Metcalf and, Weaver informing Billy Metcalf of her sexual harassment complaints against him.

(f)  Billy Metcalf's sexual harassment toward her created a hostile work environment and unreasonably interfered with her work performance.

(g)  Billy Metcalf's sexual-harassing related threats toward her created a hostile work environment and unreasonably interfered with her work performance.

(h)  Lisa Weaver's informing Billy Metcalf of her sexual harassment complaints against him created a hostile work environment and unreasonably interfered with her work performance.

(i)  She complied with Lakeside's anti-harassment complaint procedures and, Lakeside had knowledge of all of her said complaints against Metcalf and Weaver.

(j)  Lakeside, Golden and Weaver failed to prevent the sexual harassment of Billy Metcalf toward her.

(k)  Lakeside, Golden and Weaver failed to prevent the sexual-harassing related threats toward her.

(l)  Lakeside and Golden failed to prevent Lisa Weaver from informing Billy

Metcalf of her sexual harassment complaints against him.

(m)  Lakeside, Golden and Weaver failed to investigate her complaints about Billy Metcalf's sexual harassment of her and, complaints about Billy Metcalf's sexual-harassing related threats toward her, in a prompt, proper and confidential manner.

(n) Lakeside and Golden failed to investigate her complaints against Lisa Weaver for contacting and informing Billy Metcalf of her sexual harassment complaints against him in an untimely, improper and un-protective manner.

(o) Lakeside, Golden and Weaver failed to take prompt and appropriate corrective action to eliminate Billy Metcalf's sexual harassment of her.

(p) Lakeside, Golden and Weaver failed to take prompt and appropriate corrective action to eliminate Billy Metcalf's sexual-harassing related threats toward her.

(q)  Lakeside and Golden failed to take prompt and appropriate corrective action to eliminate Weaver's handling of her sexual harassment complaints against Billy Metcalf.

(r)  Lakeside and Golden failed to process her complaints against Weaver in a corrective and appropriate manner by allowing Weaver to participate in the investigation of the complaints against her.

68.  Since Lakeside, Golden and Weaver did not exercise reasonable care to prevent and correct promptly Billy Metcalf's previously mentioned sexually harassing behavior; since Lakeside, Golden and Weaver did not investigate

Plaintiff Harrington's sexual harassment and sexual-harassing related complaints against Billy Metcalf in a timely, proper and protective manner and, since Plaintiff Harrington reasonably exercised any and all preventive, reporting and corrective opportunities provided by her employer, Lakeside should not be afforded the *Faragher-Ellerth* affirmative defense relative to such complaints.

69.  Since Lakeside and Golden did not exercise reasonable care to prevent and correct promptly Plaintiff Harrington's complaint against Lisa Weaver for the manner in which she (Weaver) handled her sexual harassment complaints against Billy Metcalf and, since Plaintiff Harrington reasonably exercised any and all preventive, reporting and corrective opportunities provided by her employer, Lakeside should not be afforded the *Faragher-Ellerth* affirmative defense relative to such complaint.

70.  On July 26, 2013, Plaintiff Harrington filed a formal charge of unlawful employment practices with the Equal Employment Opportunity Commission (EEOC), and the Tennessee Human Rights Commission, and ultimately received from the EEOC a Notice of Right to Sue, dated March 19, 2014, a copy of which is attached hereto as Exhibit A.

### Count II: Title VII Claim against Lakeside
### for Retaliatory Termination under Title VII

71.  Plaintiff Harrington restates and reincorporates paragraphs 1 through 70 as though fully set forth herein.

72.   This Count is an action for damages against Lakeside under Title VII, 42
      U.S.C. § 2000e-3(a), for Lakeside's retaliatory suspension and termination of
      employment of Plaintiff Harrington because she opposed, reported and
      complained to Lakeside about the unlawful sexual harassment and sexual
      harassing-related threats of Billy Metcalf toward her and, because Plaintiff
      Harrington opposed, reported and complained to Lakeside about the manner
      in which Weaver handled her sexual harassment and sexual-harassing
      related complaints against Billy Metcalf.

73.   Plaintiff Harrington, as a female, is a member of a protected class under Title
      VII of the Civil Rights Act of 1964.

74.    Plaintiff Harrington engaged in protected activity by opposing, reporting and
      complaining to Lakeside about the unlawful sexual harassment and, sexual
      harassing-related threats, of Billy Metcalf toward her, as well as by opposing,
      reporting and complaining about Lisa Weaver's untimely, inappropriate and
      un-protective manner of handling her sexual harassment complaints against
      Billy Metcalf.

75.   Plaintiff Harrington suffered discriminatory adverse employment actions in
      retaliation for making such reports and complaints in the form of being
      suspended from work and, later, being terminated from her employment with
      Lakeside.

76.   Plaintiff Harrington complained to Lakeside about Billy Metcalf's unwelcome,
      unwanted and repeated sexual harassment and, sexual-harassing-related

threats toward her, as well as her aforesaid complaints against Lisa Weaver, within less than a week of her retaliatory suspension and termination of employment.  Thus, there was a causal connection between her exercising her protected rights under Title VII, as described hereinabove, and the adverse employment actions taken against her in the form of suspension and termination of employment.

77.    As a direct and proximate cause of Plaintiff Harrington's aforesaid complaints against Billy Metcalf and Lisa Weaver, she was suspended for four (4) days and then, terminated from her employment on April 29, 2013, all in retaliation for exercising her rights protected under Title VII, 42 U.S.C. § 2000e, *et seq*. But for Plaintiff Harrington exercising her protected rights under Title VII by opposing, reporting and complaining to Lakeside about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, opposing, reporting and complaining to Lakeside about the manner in which Weaver handled her said complaints against Billy Metcalf, Plaintiff Harrington would not have been so suspended or terminated.

78.    Lakeside's treatment of Plaintiff Harrington, following her aforesaid complaints, was part of a knowing, malicious, reckless and intentional pattern of retaliation, in violation of Title VII, 42 U.S.C. § 2000e-3(a).

79.    As a direct and proximate result of Lakeside's retaliatory suspension and termination of Plaintiff Harrington, all contrary to its anti-harassment policy (Exhibit E) and, in violation of Title VII, 42 U.S.C. § 2000e-3(a), she has

suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

80.  Since Lakeside did not exercise reasonable care to prevent, investigate  and correct promptly the previously mentioned sexually harassing behavior; since Lakeside is strictly liable for the suspension and termination of Plaintiff Harrington by Golden and, since Plaintiff Harrington reasonably exercised any and all preventative, reporting and corrective opportunities provided by her employer, Lakeside should not be afforded the *Faragher-Ellerth* affirmative defense relative to her said suspension and termination.

81.  On July 26, 2013, Plaintiff Harrington filed a formal charge of unlawful employment practices with the Equal Employment Opportunity Commission (EEOC) and the Tennessee Human Rights Commission and, ultimately received from the EEOC a Notice of Right to Sue, dated March 19, 2014, a copy of which is attached hereto as Exhibit A.

### Count III: Supplemental State Claim against Lakeside for Sexual Harassment and Sex Discrimination in Violation of the Tennessee Human Rights Act

82.  Plaintiff Harrington restates and reincorporates paragraphs 1 through 81 as though fully set forth herein.

83.  This Count is an action for damages against Lakeside under the Tennessee Human Rights Act, Tennessee Code Annotated §4-21-101, *et seq.,* and, under T.C.A, §4-21-301, *et seq.,* for sex discrimination, sexual harassment and

sexual-harassing-related threats made by Billy Metcalf toward Plaintiff Harrington, because of Lakeside's failure to reasonably prevent the sexual harassment and sexual-harassing-related threats made by Billy Metcalf toward Plaintiff Harrington, because of Lakeside's failure to promptly, properly and adequately investigate, address and correct Plaintiff Harrington's sexual harassment and sexual-harassing-related complaints against Billy Metcalf and, because of Lakeside's failure to promptly, properly and adequately  investigate, address and correct her opposition to the manner in which Lisa Weaver was handling her complaints against Billy Metcalf for his sexual harassment and sexually harassing-related threats toward her, all occurring during the course of Plaintiff's employment with Lakeside and during all times pertinent to this action.

84. At all relevant times herein, Lakeside had eight (8) or more employees for each working day in each of twenty (20) or more calendar weeks in the current calendar year.

85. After Billy Metcalf became re-employed by Lakeside and, Terry Brenner conveyed to  Joy Golden that he (Brenner) had been informed by a reliable source that Billy Metcalf had been terminated by La Paloma for showing one of its patients a photo of a penis from his phone, Lakeside failed to investigate, address and/or correct such concern which, had it investigated, addressed and/or corrected such concern, could have resulted in Lakeside reasonably preventing Billy Metcalf from sexually harassing Plaintiff

Harrington, as well as preventing Billy Metcalf from sending photos of a penis to Barbara Foster and Kathy Van Dyke.  Lakeside thereby failed to reasonably prevent Billy Metcalf's unwelcome, unwanted, severe, repetitive and pervasive sexual harassment of Plaintiff Harrington, contrary to the requirements of its anti-harassment policy (Exhibit E) and, in violation of the Tennessee Human Rights Act.

86.  After Plaintiff Harrington complained to one of Lakeside's Directors about Billy Metcalf's unwelcome, unwanted and repetitive sexual harassing messages (including comments that he wanted to give Plaintiff Harrington "massages" and "multiple orgasms"), Lakeside failed to promptly, properly and adequately investigate, address and correct such sexual harassment complaints against Billy Metcalf and, failed to take any corrective or disciplinary action against Billy Metcalf for his sexual harassing behaviors, contrary to the requirements of its own anti-harassment policy (Exhibit E) and, in violation of the Tennessee Human Rights Act.

87.  After Plaintiff Harrington complained to her supervisor, Lisa Weaver, about Billy Metcalf texting two photos of a penis to her phone (a phone that was being used by her 12-year old daughter at the time) and about Billy Metcalf sending her messages that he wanted to give her "messages" and multiple orgasms," Lakeside failed to promptly, properly, adequately and confidentially  investigate and, address and correct Plaintiff Harrington's complaints and opposition to Billy Metcalf's unwelcome, unwanted and

severe sexual harassment of her, contrary to the requirements of its own anti-harassment policy (Exhibit E) and, in violation of the Tennessee Human Rights Act.

88.   After Plaintiff Harrington complained to Weaver about Billy Metcalf's sexual harassing-related threats toward her, Lakeside failed to promptly investigate, address and correct Plaintiff Harrington's said complaints and opposition to such sexual harassing-related threats, contrary to the requirements of its anti-harassment policy (Exhibit E) and, in violation of the Tennessee Human Rights Act.

89.   After Plaintiff Harrington complained about Lisa Weaver informing Billy Metcalf of her sexual harassment complaints against him, via an email, Lakeside not only failed to promptly, properly and adequately investigate, address and correct Plaintiff Harrington's complaint and opposition to the manner in which Lisa Weaver was handling her sexual harassment complaint against Billy Metcalf but, instead, began a concerted investigation by and through Joy Golden and Lisa Weaver against Plaintiff Harrington for sending such email to Lisa Weaver (contending that such email had become an official document and could be used against Lakeside), all of which was contrary to Lakeside's anti-harassment policy (Exhibit E) and in violation of the Tennessee Human Rights Act.

90.   After Plaintiff Harrington complained about Billy Metcalf's sexual harassment and threatening behaviors toward her, Joy Golden informed

- 28 -

Plaintiff Harrington that if she discussed her sexual harassment complaints with anyone else, she would be fired. In doing so, Golden and Lakeside violated her right to engage in protected activities as provided by the Tennessee Human Rights Act.

91. After Plaintiff Harrington complained about Billy Metcalf's sexual harassment and threatening behaviors toward her and, her email complaint against Lisa Weaver for mishandling the investigation of her said complaints against Billy Metcalf, Lakeside not only failed to promptly, properly and adequately investigate, address and/or correct such behaviors but, instead, commenced an unfounded, unjustified, unwarranted, unrelated and private-invasive investigation of Plaintiff Harrington, all of which was in retaliation against Plaintiff Harrington for making the aforesaid complaints against Billy Metcalf and Lisa Weaver and, all of which was contrary to Lakeside's anti-harassment policy ((Exhibit E) and, in violation of the Tennessee Human Rights Act.

92. All of the failures of Lakeside, Golden and Weaver, as described above, constitute a violation of the Tennessee Human Rights Act.

93. Billy Metcalf's sexual harassment and sexual harassing-related threatening behaviors toward Plaintiff Harrington, as previously described in this Complaint, were unwelcome, unwanted, severe, repetitive, pervasive and created an intimidating, hostile, uncomfortable and offensive work environment for Plaintiff Harrington and, had the effect of unreasonably

interfering with her work performance and private life, all of which caused her to suffer, among other things, stress, headaches, sleep loss, depression, anxiety, irritability, and relationship problems.

94.     As a direct and proximate result of the sexual harassment and sexually harassing-related threats by Billy Metcalf toward Plaintiff Harrington, her complaints against Billy Metcalf because of such behaviors and, Plaintiff Harrington's aforesaid complaints against Lisa Weaver, as well as the failure of Lakeside to promptly, properly and adequately investigate, address and/or correct Plaintiff Harrington's said complaints, Plaintiff Harrington has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

95.     Lakeside, Golden's and Weaver's aforementioned actions, failures, inactions and omissions were intentional, malicious, reckless and outrageous.

96.     At all relevant times set forth herein, Plaintiff Harrington avers that:

(a)   She, as a female, was a member of a protected class under the Tennessee Human Rights Act.

(b) She was subjected to unwelcome, unwanted, offensive and repeated sexual advances in the form of sexual comments, sexual advances, sexual visuals and requests for sexual favors by Billy Metcalf, all of which were based on her sex.

(c) She exercised her protected rights under The Tennessee Human Rights

Act by complaining to a Lakeside Director and her supervisor, Lisa Weaver, about Billy Metcalf's unwelcome, unwanted and repeated sexual comments, sexual advances, sexual visuals and requests for sexual favors.

(d) She also exercised her protected rights by complaining to Lisa Weaver (her supervisor) about Billy Metcalf's sexual-harassing related threats toward her.

(e)   In addition, she complained to Joy Golden about the manner in which Lisa Weaver handled her sexual harassment complaints against Billy Metcalf and, the manner in which Weaver informed Billy Metcalf of her sexual harassment complaints against him.

(f) Billy Metcalf's sexual harassment toward her created a hostile work environment and unreasonably interfered with her work performance.

(g) Billy Metcalf's sexual-harassing related threats toward her created a hostile work environment and unreasonably interfered with her work performance.

(h) Lisa Weaver's informing Billy Metcalf of her sexual harassment complaints against him created a hostile work environment and unreasonably interfered with her work performance.

(i)  She complied with Lakeside's anti-harassment complaint procedures and, Lakeside had knowledge of all of her such complaints against Metcalf and Weaver.

(j)  Lakeside, Golden and Weaver failed to prevent the sexual harassment of

Billy Metcalf toward her.

(k) Lakeside, Golden and Weaver failed to prevent Billy Metcalf's sexual-harassing related threats toward her.

(l) Lakeside and Golden failed to prevent Lisa Weaver from informing Billy Metcalf of her sexual harassment complaints against him.

(m) Lakeside, Golden and Weaver failed to investigate her complaints about Billy Metcalf's sexual harassment of her and, complaints about Billy Metcalf's sexual-harassing related threats toward her, in a prompt, proper and confidential manner.

(n) Lakeside and Golden failed to investigate her complaints against Lisa Weaver for contacting and informing Billy Metcalf of her sexual harassment complaints against him in an untimely, improper and un-protective manner.

(o) Lakeside, Golden and Weaver failed to take prompt and appropriate corrective action to eliminate Billy Metcalf's sexual harassment of her.

(p) Lakeside, Golden and Weaver failed to take prompt and appropriate corrective action to eliminate Billy Metcalf's sexual-harassing related threats toward her.

(q) Lakeside and Golden failed to take prompt and appropriate corrective action to eliminate Weaver's handling of her sexual harassment complaints against Billy Metcalf.

(r) Lakeside and Golden failed to process her complaints against Weaver in a corrective and appropriate manner by allowing Weaver to participate in the

investigation of the complaints against her.

97.  Golden, in concert with Weaver, aided, abetted and encouraged Lakeside to engage in employment-related discrimination and subverted, inhibited, impaired, discouraged and prevented Lakeside from promptly, properly and confidentially investigating and, from taking swift and appropriate corrective action, in response to Plaintiff Harrington's sexual harassment and sexual-harassing related complaints against Billy Metcalf and, her said complaints against Weaver:

(a) by commencing an investigation into Plaintiff Harrington sending Lisa Weaver an email that was critical of Weaver for informing Billy Metcalf of her sexual harassment complaints against him shortly after Plaintiff Harrington made such complaints to Weaver;

(b) by allowing Weaver to participate in an investigation of Plaintiff Harrington's said complaints against her (Weaver);

(c)  by informing Plaintiff Harrington that she would be fired if she talked to anyone about her sexual harassment complaints against Billy Metcalf;

(d) by commencing an investigation into Plaintiff  Harrington's private and personal matters and relationships that had no relevance to her said complaints against Billy Metcalf and, her complaints against Lisa Weaver for informing Billy Metcalf of her complaints shortly after they were made to her (Weaver);

 (e) by informing a lifelong and close friend of Plaintiff Harrington that he

would be fired if he talked to anyone about Plaintiff Harrington's sexual harassment complaints against Billy Metcalf or about the meeting he had with Golden;

(f) by informing a lifelong and close friend of Plaintiff Harrington that he would be terminated if he refused to provide her (Golden) with private and personal messages and information between Plaintiff Harrington and himself but, on the other hand, would not be fired if he provided her evidence that she could use to get rid of Plaintiff Harrington;

(g) by informing a lifelong and close friend of Plaintiff Harrington that she would pay for his time to go through his emails and text messages and attempt to find some evidence she could use to get rid of Plaintiff Harrington;

(h) by suspending Plaintiff Harrington from work in retaliation for her making the aforesaid complaints against Billy Metcalf and Weaver;

(i) by terminating Plaintiff Harrington's employment with Lakeside for her making the aforesaid complaints against Billy Metcalf and Weaver;

(j) all of which actions and failures (a) through (i), next above, were in violation of the Tennessee Human Rights Act.

98.   Golden, in concert with Weaver, caused Plaintiff Harrington to suffer an adverse employment action and a loss of a tangible employment benefit by suspending her from work because of  her opposing and complaining about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, because of her opposing and complaining about the manner

in which Weaver had handled her sexual harassment complaints against Billy Metcalf, all of which were in violation ot the Tennessee Human Rights Act.

99.     Golden, in concert with Weaver, caused Plaintiff Harrington to suffer an adverse employment action and a loss of a tangible employment benefit by terminating her employment because of her opposing and complaining about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, because of her opposing and complaining about the manner in which Weaver had handled her sexual harassment complaints against Billy Metcalf, all of which were in violation of the Tennessee Human Rights Act

100.     Since Lakeside, Golden and Weaver did not exercise reasonable care to prevent and correct promptly Billy Metcalf's previously mentioned sexually harassing behavior; since Lakeside, Golden and Weaver did not investigate Plaintiff Harrington's sexual harassment and sexual-harassing related complaints against Billy Metcalf in a timely, proper and protective manner and, since Plaintiff Harrington reasonably exercised any and all preventive, reporting and corrective opportunities provided by her employer, Lakeside should not be afforded the *Faragher-Ellerth* affirmative defense relative to such complaints.

101.     Since Lakeside and Golden did not exercise reasonable care to prevent and correct promptly Plaintiff Harrington's complaint against Lisa Weaver for the

manner in which she (Weaver) handled her sexual harassment complaints against Billy Metcalf and, since Plaintiff Harrington reasonably exercised any and all preventive, reporting and corrective opportunities provided by her employer, Lakeside should not be afforded the *Faragher-Ellerth* affirmative defense relative to such complaint.

### Count IV: Supplemental State Claim against Lakeside for Retaliatory Termination in Violation of the Tennessee Human Rights Act

102. Plaintiff Harrington restates and reincorporates paragraphs 1 thru 101 as though fully set forth herein.

103. This Count is an action for damages against Lakeside under the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §4-21-101, *et seq*., and Tenn. Code Ann. §4-21-301, *et seq.,* for Lakeside's retaliation against Plaintiff Harrington for her reporting and complaining to Lakeside about the unlawful sexual harassment and sexual harassing-related threats of Billy Metcalf toward her and, for retaliation against Plaintiff Harrington for complaining about Lisa Weaver informing Billy Metcalf of her sexual harassment complaints against him, in an untimely, inappropriate and un-protective manner.

104. Plaintiff Harrington, as a female, is a protected class member under the Tennessee Human Rights Act

105. At all relevant times herein, Lakeside had eight (8) or more employees for each working day in each of twenty (20) or more calendar weeks in the

current calendar year.

106.  Plaintiff Harrington engaged in protected activity by opposing, reporting and complaining to Lakeside about the unlawful sexual harassment and, sexual harassing-related threats, of Billy Metcalf toward her, as well as opposing, reporting and complaining about Lisa Weaver's untimely, inappropriate and un-protective manner of informing Billy Metcalf of her sexual harassment complaints against him.

107.  Lakeside had more than sufficient knowledge of Plaintiff Harrington's aforesaid complaints against Billy Metcalf and Lisa Weaver.

108.  Plaintiff Harrington suffered discriminatory adverse employment action and a loss of  tangible employment benefits by being suspended and terminated from employment in retaliation for her opposing, reporting and complaining about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, for her  opposing, reporting and, complaining about the manner in which weaver had handled her sexual harassment complaints against Billy Metcalf, all of which were in violation of the Tennessee Human Rights Act.

109.  Plaintiff Harrington exercised her protected rights under the Tennessee Human rights Act by complaining to Lakeside about Billy Metcalf's unwelcome and unwanted sexual harassment and, sexual-harassing-related threats, toward her, as well as by complaining about the manner in which Lisa Weaver had informed Billy Metcalf of her sexual harassment complaints

against him shortly after receiving such complaints from Plaintiff Harrington, within less than a week of her retaliatory suspension and termination of employment with Lakeside.

110.  As a direct and proximate cause of her aforesaid complaints against Billy Metcalf and Lisa Weaver, Plaintiff Harrington was suspended for four days and then, terminated from her employment on April 29, 2013, all of which were in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*, and Tenn. Code Ann. §4-21-301, *et seq*. But for such complaints, Plaintiff Harrington would not have been so suspended or terminated.

111.  Lakeside's aforesaid suspension and termination of employment of Plaintiff Harrington, following her aforesaid  complaints, was done in a malicious, reckless and intentional pattern of retaliation, in violation of Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*, and Tenn. Code Ann. § 4-21-301, *et seq*.

112..  As a direct and proximate result of Lakeside's retaliatory suspension and termination of Plaintiff Harrington, she has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

113.   Golden, in concert with Weaver, caused Plaintiff Harrington to suffer an adverse employment action and a loss of a tangible employment benefit by suspending her from work because of  her opposing, reporting and

complaining about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, because of her opposing and complaining about the manner in which Weaver had handled her sexual harassment complaints against Billy Metcalf, all of which were in violation of the Tennessee Human Rights Act.

114.   Golden, in concert with Weaver, caused Plaintiff Harrington to suffer an adverse employment action and a loss of a tangible employment benefit by terminating her employment because of her opposing, reporting and complaining about Billy Metcalf's sexual harassment and sexual-harassing related threats toward her and, because of her opposing and complaining about the manner in which Weaver had handled her sexual harassment complaints against Billy Metcalf, all of which were in violation of the Tennessee Human Rights Act.

### Count V: Supplemental State Claim against Lakeside for Intentional Infliction of Emotional Distress

115.   Plaintiff Harrington restates and reincorporates paragraphs 1 thru 114 as though fully set forth herein.

116.   This Count is an action for damages against Lakeside for intentional infliction of emotional distress upon Plaintiff Harrington.

117.   The actions, failures, behaviors, inactions and omissions of Lakeside, Golden and Weaver, as previously described in this Complaint, were so intentional, reckless, malicious and outrageous that persons in a civilized society should

- 39 -

not be expected to tolerate them.

118.   As a direct and proximate result of the aforementioned outrageous, reckless, malicious and intentional acts, behaviors, inactions and omissions of Lakeside, Golden and Weaver toward Plaintiff Harrington, as previously described in this Complaint, Plaintiff Harrington has suffered severe mental and emotional injury and distress.

119.   The aforementioned outrageous, reckless, malicious and intentional actions, failures, behaviors, inactions and omissions of Lakeside, Golden and Weaver were in violation of Tennessee common law.

120.   Lakeside, Golden and Weaver are liable to Plaintiff Harrington for their said intentional infliction of emotional distress upon her.

**Count VI: Supplemental State Claim against
Lakeside for Negligent Retention of Billy Metcalf**

121.   Plaintiff Harrington restates and reincorporates paragraphs 1 thru 120 as though fully set forth herein.

122.   Prior to Billy Metcalf's sexual harassment and sexual harassing-related threats toward Plaintiff Harrington, as previously described in this Complaint, Lakeside and Golden knew or, reasonably should have known, that Billy Metcalf had engaged in sexual harassment at his former employment at La Paloma by showing a photo of a penis to one of its patients, for which he was terminated from his employment with La Paloma. (See Exhibit B)

123. Prior to Billy Metcalf's sexual harassment and sexual harassing-related threats toward Plaintiff Harrington, as previously described in this Complaint, Lakeside and Golden knew or, reasonably should have known, that Billy Metcalf had sexually harassed one of Lakeside's part-time employees, Barbara Foster, by texting her two photos of a penis from his phone. (See Exhibit C)

124. Prior to Billy Metcalf's sexual harassment and sexual harassing-related threats toward Plaintiff Harrington, as previously described in this Complaint, Lakeside and Golden knew or, reasonably should have known, that Billy Metcalf had sexually harassed an employee with whom he had worked at Defendant's Triage, Kathy Van Dyke, by texting her two photos of a penis from his phone. (See Exhibit D)

125. As a result of such knowledge or, should-have known knowledge, as previously described in this Complaint, Lakeside and Golden were negligent in thereafter retaining Billy Metcalf as an employee in that they should have foreseen that Billy Metcalf' would likewise sexually harass another of its employees if he remained a Lakeside employee, such as his sexual harassment and sexual-harassing threats toward Plaintiff Harrington.

126. As a result of such knowledge or, should-have known knowledge, as previously described in this Complaint, Lakeside and Golden failed to exercise due care to protect and prevent Plaintiff Harrington from being sexually harassed and threatened by Billy Metcalf.

127. As a direct and proximate result of Lakeside's and Golden's negligence in retaining Billy Metcalf as an employee after it knew or, should have known, of his previous sexual harassment activities and, Billy Metcalf's subsequent sexual harassment and sexual-harassing threats toward Plaintiff Harrington, she was suspended from work and later terminated from her employment with Lakeside by Golden and Weaver in retaliation for complaining about Billy Metcalf's sexual harassment and threatening behaviors toward her and her complaints about the manner in which her sexual harassment complaints against him was being handled by Weaver.  But for the said negligence of Lakeside and Golden, Plaintiff Harrington would not have been suspended from work nor later terminated in retaliation for making such complaints against Billy Metcalf and Weaver.

128. As a direct and proximate result of Lakeside's and Golden's negligence in retaining Billy Metcalf as an employee after it knew or, should have known, of his previous sexual harassment activities and, Billy Metcalf's subsequent sexual harassment and sexual-harassing threats toward Plaintiff Harrington, Plaintiff Harrington has suffered financially and emotionally.

129 Lakeside's and Golden's negligent retention of Billy Metcalf's employment after it knew or, should have known, of his previous sexual harassment behaviors, was in reckless disregard of Plaintiff Harrington's protected rights under Title VII of the Civil Rights  Act of 1964, as amended, and was in reckless disregard of  Plaintiff Harrington's protected rights under the

Tennessee Human Rights Act.

130. Lakeside and Golden are liable to Plaintiff Harrington for their negligent retention of Billy Metcalf as one of their employees after attaining such knowledge or, should have known knowledge, of Billy Metcalf's previous sexual harassment behaviors and, for Billy Metcalf's sexual harassment and sexual-harassing related threats toward Plaintiff Harrington during her employment with Lakeside.

**Count VII: Supplemental State Claim against
Lisa Weaver for Violation of the Tennessee Human Rights Act**

131. Plaintiff Harrington restates and reincorporates Paragraphs 1 through 130, above, as though set forth fully herein.

132. This Count is an independent and individual action for damages against Lisa Weaver under the Tennessee Human Rights Act (THRA); Tenn. Code Ann. § 4-21-301, *et seq*.

133. Lisa Weaver is a "person" as defined by the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §4-21-101, *et seq., and,* as it pertains to Tenn. Code Ann. § 4-21-301, *et seq*.

134. Lisa Weaver aided, abetted and encouraged Lakeside to engage in employment-related discrimination and subverted, inhibited, impaired, discouraged and prevented Lakeside from promptly, properly and confidentially investigating and, taking swift and appropriate corrective action, in response to Plaintiff Harrington's sexual harassment complaints

against Billy Metcalf, by Weaver informing Billy Metcalf of Plaintiff Harrington's complaints shortly after they were made to her. As a result, Weaver is liable in monetary damages to Plaintiff Harrington for such conduct, behaviors and failures -- under the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-301, *et seq.*, under the authority of *Allen v. McPhee,* 240 S.W.3d 803 (Tenn. 2007) and, under the persuasive authority of *Emerson v. Oak Ridge Research, Inc.,* 187 S.W.3d. 364 (Tenn. App. 2005).

135. Weaver, in concert with Golden, aided, abetted and encouraged Lakeside to engage in employment-related discrimination and subverted, inhibited, impaired, discouraged and prevented Lakeside from promptly, properly and confidentially investigating and, from taking swift and appropriate corrective action, in response to Plaintiff Harrington's sexual harassment complaints against Billy Metcalf and, her complaints against Weaver for the manner in which she (Weaver) informed Metcalf of Plaintiff Harrington's complaints against him:

(a) by commencing an investigation into Plaintiff Harrington sending Lisa Weaver an email that was critical of the manner in which Weaver handled her sexual harassment complaints against Billy Metcalf;

(b) by participating in an investigation of Plaintiff Harrington's complaints against her for the manner in which she had handled Plaintiff Harrington's complaints against Billy Metcalf;

(c) by Golden informing Plaintiff Harrington that she would be fired if she

talked to anyone about her sexual harassment complaints against Billy Metcalf;

(d) by Golden commencing an investigation into Plaintiff Harrington's private and personal matters and relationships that had no relevance to her said complaints against Billy Metcalf and Weaver;

(e) by Golden challenging Billy Metcalf to find and provide her evidence that Plaintiff Harrington had invited him to send her text photos of a penis;

(f) by Golden informing a lifelong and close friend of Plaintiff Harrington that he would be fired if he talked to anyone about Plaintiff Harrington sexual harassment complaints against Billy Metcalf or about the meeting he had with Golden;

(g) by Golden informing a lifelong and close friend of Plaintiff Harrington that he would be terminated if he refused to provide her (Golden) with private and personal messages and information between Plaintiff Harrington and himself but, on the other hand, would not be fired if he provided her evidence that she could use to get rid of Plaintiff Harrington.

(h) by Golden informing a lifelong and close friend of Plaintiff Harrington that she would pay for his time to go through his emails and text messages and attempt to find some evidence she could use to get rid of Plaintiff Harrington;

(i) by suspending Plaintiff Harrington from work in retaliation for Plaintiff Harrington making the aforesaid complaints against Billy Metcalf and

- 45 -

Weaver;

(j) by Golden's terminating Plaintiff Harrington's employment with Lakeside in retaliation for her making such complaints;

136.   But for Weaver's aforesaid actions, conduct, behaviors and failures, as described next above, Plaintiff Harrington would not have been suspended from work.

137.   But for Weaver's aforesaid actions, conduct, behaviors and failures, as described above, Plaintiff Harrington would not have been terminated from her employment with Lakeside.

138.   Weaver's and Golden's aforesaid concerted actions, conduct, behaviors, failures, suspension and termination of Plaintiff Harrington were intentional, malicious, reckless and outrageous.

139.   As a direct and proximate cause and result of Weaver's and Golden's intentional, malicious, reckless and outrageous suspension and termination of Plaintiff Harrington, she has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of income, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

140.   Weaver therefore is independently, individually and personally liable in monetary damages to Plaintiff Harrington for her aforesaid actions, conduct, behaviors, failures and, the suspension and termination of employment of Plaintiff Harrington under the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-301, *et seq.*, and, under the authority of *Allen v. McPhee,* 240

S.W.3d 803 (Tenn. 2007) and, under the persuasive authority of *Emerson v. Oak Ridge Research, Inc.,* 187 S.W.3d. 364 (Tenn. App. 2005).

### Count VIII: Supplemental State Claim against Joy Golden for Violation of the Tennessee Human Rights Act

141.   Plaintiff Harrington restates and reincorporates paragraphs 1 through 140, above, as though set forth fully herein.

142.   This Count is an independent and individual action for damages against Joy Golden under the Tennessee Human Rights Act (THRA); Tenn. Code Ann. § 4-21-301, *et seq*.

143.   Joy Golden is a "person" as defined by the Tennessee Human Rights Act

144.   Joy Golden aided, abetted and encouraged Lakeside to engage in employment-related discrimination by failing to promptly, properly and adequately investigate whether Billy Metcalf had been terminated from La Paloma because he had shown a La Paloma patient photos of a penis because, had such an investigation validated that Billy Metcalf had been terminated for such behavior, and further, had she not retained Billy Metcalf, as a Lakeside employee, she could have prevented Plaintiff Harrington, as well as Barbara Foster and Kathy Van Dyke, from having been sexually harassed by Billy Metcalf.

145.    Golden, in concert with Weaver, aided, abetted and encouraged Lakeside to engage in employment-related discrimination and subverted, inhibited, impaired, discouraged and prevented Lakeside from promptly, properly and

confidentially investigating and, from taking swift and appropriate corrective action, in response to Plaintiff Harrington's sexual harassment complaints against Billy Metcalf and, her complaints against Weaver for the manner in which she (Weaver) informed Metcalf of Plaintiff Harrington's complaints against him:

(a) by commencing an investigation into Plaintiff Harrington sending Lisa Weaver an email that was critical of the manner in which Weaver handled her sexual harassment complaints against Billy Metcalf;

(b) by allowing Weaver to participate in an investigation of Plaintiff Harrington' complaints against Weaver, for the manner in which she had handled Plaintiff Harrington's complaints against Billy Metcalf;

(c) by Golden informing Plaintiff Harrington that she would be fired if she talked to anyone about her sexual harassment complaints against Billy Metcalf;

(d) by commencing an investigation into Plaintiff Harrington's private and personal matters and relationships that had no relevance to her said complaints against Billy Metcalf and Weaver;

(e) by Golden challenging Billy Metcalf to find and provide her evidence that Plaintiff Harrington had invited him to send her text photos of a penis;

(f) .by Golden informing a lifelong and close friend of Plaintiff Harrington that he would be fired if he talked to anyone about Plaintiff Harrington sexual harassment complaints against Billy Metcalf or about the meeting he

had with Golden;

(g) by Golden informing a lifelong and close friend of Plaintiff Harrington that he would be terminated if he refused to provide her (Golden) with private and personal messages and information between Plaintiff Harrington and himself but, on the other hand, would not be fired if he provided her evidence that she could use to get rid of Plaintiff Harrington;

(h) by Golden informing a lifelong and close friend of Plaintiff  Harrington that she would pay for his time to go through his emails and text messages and attempt to find some evidence she could use to get rid of Plaintiff Harrington;

(i) by suspending Plaintiff Harrington from work in retaliation for Plaintiff Harrington making such complaints;

(j) by Golden's termination of Plaintiff Harrington employment with Lakeside in retaliation for her making such complaints.

146.  But for Golden's conduct, behaviors and failures, as enumerated above, Plaintiff Harrington would not have been suspended from work.

147.  But for Golden's conduct, behaviors and failures, as enumerated above, Plaintiff Harrington would not have been terminated from her employment with Lakeside.

148.  Golden's and Weaver's retaliatory suspension of Plaintiff Harrington was intentional, malicious, reckless and outrageous.

149.  Golden's and Weaver's retaliatory termination of Plaintiff Harrington's

employment with Lakeside was intentional, malicious, reckless and outrageous

150.   As a direct and proximate cause and result of Golden's and Weaver's intentional, malicious, reckless and outrageous suspension and termination of Plaintiff Harrington, she has suffered extreme mental anguish, outrage, humiliation, embarrassment, loss of income, loss of enjoyment of life, loss of earning capacity, loss of benefits, and other damages.

151.   Golden therefore is independently, individually and personally liable in monetary damages to Plaintiff Harrington for her aforesaid actions, conduct, behaviors, failures and, the suspension and termination of employment of Plaintiff Harrington under the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-301, *et seq*. and, under the authority of *Allen v. McPhee,* 240 S.W.3d 803 (Tenn. 2007) and, under the persuasive authority of *Emerson v. Oak Ridge Research, Inc.,* 187 S.W.3d. 364 (Tenn. App. 2005).

WHEREFORE, Plaintiff Harrington prays for the following relief:

1.   That a judgment be entered for the Plaintiff and against the Defendants Lakeside, Joy Golden, and Lisa Weaver for equitable and compensatory damages in an amount of $1,000,000.00 and, for punitive damages in an amount of $3,000,000.00, plus reasonable attorneys' fees.

2.   That Defendants Lakeside, Joy Golden and Lisa Weaver be subjected to such remedial measures as this Court deems appropriate in order to

ensure compliance with applicable anti-discrimination laws;

3.      That this matter be tried before a jury;

4.      That all discretionary costs and expenses of this action be taxed to the Defendants;

5.      That Plaintiff be allowed to amend her Complaint to include any newly discovered evidence that would be relevant to this action, and,

6.      All other general legal and equitable relief to which the Plaintiff may be entitled.

Respectfully submitted,

s/ Gordon E. Jackson
Gordon E. Jackson (Tenn. BPR #008323)
James L. Holt, Jr. (Tenn. BPR #012123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
(901) 754-8001 (Office)
(901) 754-8524 (Fax)
*gjackson@jsyc.com*
*jholt@jsyc.com*

Attorneys for the Plaintiff